JUDGE BUCHWALD

11 CIV 8827

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STEPHEN SPRINGLE,

DOC # 1

                          Plaintiff,

     -against-

COMPLAINT

JURY DEMAND

THE CITY OF NEW YORK, POLICE
OFFICER KEVIN GIERAS (Shield # 6612)
and POLICE OFFICERS JOHN DOE 1-10,

                          Defendants.
------------------------------------------------------------x

Stephen Springle (hereinafter "plaintiff"), by his attorney(s), The Law Offices of Wale Mosaku, P.C., complaining of the defendants, The City of New York, Police Officer Kevin Gieras (Shield # 6612) and Police Officers John Doe 1-10 (hereinafter collectively referred to as "the Defendants"), upon information and belief, alleges as follows:

### NATURE OF THE ACTION

1. This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and §1985], [and arising under the law and statutes of the State of New York].

### JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. Section 1983, 28 U.S.C. Section 1343, 28 U.S.C. Section 1331, and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## THE PARTIES

4. Plaintiff is a citizen of the United States, resident in Kings County, New York State. Plaintiff is a black male of full age.

5. At all relevant times, defendants Police Officer Kevin Gieras (Shield # 6612) and Police Officers John Doe 1-10 (hereinafter "defendant officers") were law enforcement officers employed by the Police Department of the City of New York ("NYPD").

6. At all times alleged herein, the defendant officers were employed as law enforcement officers of the City of New York, State of New York, and were acting under the color of their official capacity and their acts were performed under color of the statutes and ordinances of the City of New York and/or the State of New York. The defendant officers were the servants, agents, and employees of their co-defendant, the City of New York, so that their acts are imputed to the City of New York and the NYPD.

7. At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was the employer of the defendant officers through its Police Department, namely the NYPD, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York.

8. Plaintiff sues all defendants in their individual and official capacities.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9. On or about January 16, 2009 at approximately 11:00 p.m., within the movie theatre located at 234 West 42nd Street, New York, New York (hereinafter "subject premises"), the plaintiff was subjected to a vicious assault and battery, and thereafter falsely arrested without probable cause by the defendant officers.

10. Prior to his arrest, the plaintiff was lawfully within the subject premises, having previously purchased a ticket to watch a movie about the deceased Hip Hop artist Biggie Smalls.

11. The plaintiff had gone to the subject premises with some friends to watch the movie, and intended to see the late show.

12. The plaintiff and his friends entered into the movie theatre where the movie was to be shown, and found seats.

13. After having found seats, the plaintiff and a friend, namely Justin Ford, decided to go purchase snacks from a concession stand within the subject premises while the previews were being shown.

14. As the plaintiff and Mr. Ford were waiting on line to purchase snacks, and just as they were at the front of the line, numerous police officers ran into the subject premises.

15. The plaintiff and Mr. Ford were able to purchase their snacks, after which they went back into the theatre where the movie was to be shown.

16. As the plaintiff and Mr. Ford walked back into the theatre, they observed that the lights were on. The lights of the theatre had been dimmed for the previews when the plaintiff and Mr. Ford had originally left to purchase snacks.

17. The plaintiff and Mr. Ford also observed that there was a commotion as a result of a fight that had apparently broken out while they had gone to purchase snacks.

18. The plaintiff also heard an announcement on the "PA" system apologizing for the inconvenience.

19. The plaintiff and Mr. Ford went back to their seats to prepare to watch the movie.

20. After they were seated, the defendant officers approached the section where the plaintiff and Mr. Ford were, and instructed Mr. Ford to leave the movie theatre.

10. Prior to his arrest, the plaintiff was lawfully within the subject premises, having previously purchased a ticket to watch a movie about the deceased Hip Hop artist Biggie Smalls.

11. The plaintiff had gone to the subject premises with some friends to watch the movie, and intended to see the late show.

12. The plaintiff and his friends entered into the movie theatre where the movie was to be shown, and found seats.

13. After having found seats, the plaintiff and a friend, namely Justin Ford, decided to go purchase snacks from a concession stand within the subject premises while the previews were being shown.

14. As the plaintiff and Mr. Ford were waiting on line to purchase snacks, and just as they were at the front of the line, numerous police officers ran into the subject premises.

15. The plaintiff and Mr. Ford were able to purchase their snacks, after which they went back into the theatre where the movie was to be shown.

16. As the plaintiff and Mr. Ford walked back into the theatre, they observed that the lights were on. The lights of the theatre had been dimmed for the previews when the plaintiff and Mr. Ford had originally left to purchase snacks.

17. The plaintiff and Mr. Ford also observed that there was a commotion as a result of a fight that had apparently broken out while they had gone to purchase snacks.

18. The plaintiff also heard an announcement on the "PA" system apologizing for the inconvenience.

19. The plaintiff and Mr. Ford went back to their seats to prepare to watch the movie.

20. After they were seated, the defendant officers approached the section where the plaintiff and Mr. Ford were, and instructed Mr. Ford to leave the movie theatre.

21. The plaintiff and Mr. Ford tried to explain to the defendant officers that Mr. Ford was not involved in the commotion that had occurred. However, the defendant officers continued to insist that Mr. Ford leave the subject premises.

22. The plaintiff decided to leave with Mr. Ford, and as such, informed the defendant officers that before they left, they would attempt to get a refund.

23. At that point the defendant officers grabbed the plaintiff, and told him to leave at that moment.

24. The plaintiff complied and was walking out while being followed by the defendant officers.

25. As the plaintiff was walking out, he expressed to the defendant officers his belief that their insistence that he leave without being given the opportunity to obtain a refund was unfair.

26. Just as the plaintiff exited the subject premises, he was suddenly attacked by the defendant officers.

27. The defendant officers assaulted the plaintiff, and used physical force that was in excess of that necessary to effect the plaintiff's arrest.

28. In the course of arresting the plaintiff, the defendant officers punched and kicked the plaintiff on his head, body and limbs.

29. After assaulting and battering the plaintiff for no reason, the plaintiff was placed under arrest by the defendant officers.

30. After the plaintiff had been unlawfully arrested as set forth above, he was taken to the 14th precinct. The plaintiff was photographed and fingerprinted, and thereafter transported to "central booking" located within the New York County Criminal Courthouse building at 100 Centre Street, New York, New York 10007.

31. On or about January 18, 2009, at approximately 02:00 a.m., the plaintiff was arraigned before a Judge on the following charges:
    a. Resisting Arrest [P.L. 205.30]; and
    b. Disorderly Conduct [P.L. 240.20(1)].

32. In the criminal complaint, which he signed on January 17, 2009 at approximately 08:50 a.m., defendant Police Officer Kevin Gieras (Shield # 6612) made false allegations against the plaintiff.

33. Upon arraignment, the plaintiff was released upon his own recognizance.

34. Due to the injuries he sustained as a result of the excessive force and assault that was perpetrated upon him, the plaintiff, upon his release from incarceration, was caused to go to Richmond University Hospital, in order to seek and obtain medical attention.

35. After the plaintiff was compelled to return to Court on numerous occasions in defense of said false charges, the case was dismissed on July 7, 2009 on "speedy trial" grounds.

36. The docket # of the Criminal Court action was 2009NY004887.

## CAUSE(S) OF ACTION AGAINST EACH DEFENDANT OFFICER: FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C § 1983/NEW YORK STATE LAW

37. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 36 of this complaint as though fully set forth herein.

38. The arrest, detention and imprisonment of plaintiff were without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest or subsequent detention.

39. As a result of plaintiff's false arrest and imprisonment, he has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been caused to incur legal expenses, and has been otherwise damaged in his character and reputation.

40. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

41. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

42. This action falls within one or more of the exceptions of the New York State Civil Practice Law and Rules §1602.

## CAUSE(S) OF ACTION AGAINST EACH DEFENDANT OFFICER: MALICIOUS PROSECUTION UNDER 42 U.S.C § 1983/NEW YORK STATE LAW

43. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 42 of this complaint as though fully set forth herein.

44. The commencement and continued prosecution of the criminal judicial proceeding against plaintiff, including the arrest, the imprisonment, and the charges against plaintiff were committed by or at the insistence of the defendants without probable cause or legal justification, and with malice.

45. That the defendants were directly involved in the initiation of criminal proceedings against the plaintiff.

46. That the defendants lacked probable cause to initiate criminal proceedings against the plaintiff.

47. That the defendants acted with malice in initiating criminal proceedings against the plaintiff.

48. That the defendants were directly involved in the continuation of criminal proceedings against the plaintiff.

49. That the defendants lacked probable cause in continuing criminal proceedings against the plaintiff.

50. That the defendants acted with malice in continuing criminal proceedings against the plaintiff.

51. That the defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

52. That the defendants misrepresented and falsified evidence to the prosecutors in the New York County District Attorney's office.

53. That the defendants withheld exculpatory evidence from the prosecutors in the New York County District Attorney's office.

54. That the defendants did not make a complete statement of facts to the prosecutors in the New York County District Attorney's office.

55. The criminal judicial proceeding initiated against plaintiff was dismissed on July 7, 2009, and terminated in the plaintiff's favor.

56. The arrest, imprisonment and prosecution of the plaintiff were malicious and unlawful, because plaintiff had committed no crime and there was no probable cause to believe that plaintiff had committed any crimes.

57. The defendants actions were intentional, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

58. As a consequence of the malicious prosecution by the defendants, plaintiff suffered a significant loss of liberty, humiliation, mental anguish, depression, loss of wages from work, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against each of the defendants, individually and severally.

## CAUSE(S) OF ACTION AGAINST EACH DEFENDANT OFFICER: EXCESSIVE FORCE UNDER 42 U.S.C § 1983

59. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 58 of this complaint as though fully set forth herein.

60. The level of force employed by the defendant officers was objectively unreasonable and in violation of the plaintiff's constitutional rights.

61. As a result of the aforementioned conduct of the defendant officers, the plaintiff was subjected to excessive force, resulting in physical injuries.

## CAUSE(S) OF ACTION AGAINST EACH DEFENDANT OFFICER: UNLAWFUL SEARCH UNDER 42 U.S.C § 1983

62. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 61 of this complaint as though fully set forth herein.

63. Following the plaintiff's arrest, the defendants searched and/or caused the plaintiff and/or his property to be searched, without any individualized reasonable suspicion that he was concealing weapons or contraband.

64. As a result of the foregoing, the plaintiff and/or his property was subjected to an illegal and improper search.

65. The foregoing unlawful search violated the plaintiff's constitutional right to privacy, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

## CAUSE(S) OF ACTION AGAINST EACH DEFENDANT OFFICER: FAILURE TO INTERVENE UNDER 42 U.S.C § 1983

66. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 65 of this complaint as though fully set forth herein.

67. Each and every individual defendant had an affirmative duty to intervene on the plaintiff's behalf to prevent the violation to his constitutional rights, as more fully set forth above.

68. The individual defendants failed to intervene on the plaintiff's behalf to prevent the violation of his constitutional rights, despite having had a realistic and reasonable opportunity to do so.

69. As a consequence of said defendants' actions, plaintiff suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the

amount of to be determined at trial, against each of the defendants, individually and severally.

### CAUSE(S) OF ACTION AGAINST EACH DEFENDANT OFFICER: DENIAL OF A CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER 42 U.S.C § 1983 DUE TO THE FABRICATION OF EVIDENCE

70. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 69 of this complaint as though fully set forth herein.

71. The individual defendants created false evidence against the plaintiff.

72. The individual defendants forwarded false evidence and false information to the prosecutors in the New York County District Attorney's office.

73. That said defendants were directly involved in the initiation of criminal proceedings against the plaintiff.

74. That said defendants lacked probable cause to initiate criminal proceedings against the plaintiff.

75. That said defendants acted with malice in initiating criminal proceedings against the plaintiff.

76. That said defendants were directly involved in the continuation of criminal proceedings against the plaintiff.

77. That said defendants lacked probable cause in continuing criminal proceedings against the plaintiff.

78. That said defendants acted with malice in continuing criminal proceedings against the plaintiff.

79. That said defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

80. That said defendants misrepresented and falsified evidence to the prosecutors in the New York County District Attorney's office.

81. That said defendants withheld exculpatory evidence from the prosecutors in the New York County District Attorney's office.

82. That said defendants did not make a complete statement of facts to the prosecutors in the New York County District Attorney's office.

83. By creating false evidence against the plaintiff; forwarding false evidence and information to the prosecutors; and by providing false and misleading testimony throughout the criminal proceedings, the defendants violated the plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

84. As a consequence of said defendants' actions, plaintiff suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in an amount to be determined at trial, against each of the defendants, individually and severally.

## CAUSE OF ACTION AGAINST ALL DEFENDANTS: FALSE ARREST, FALSE IMPRISONMENT, MALICIOUS PROSECUTION, EXCESSIVE FORCE AND UNLAWFUL SEARCH PURSUANT TO ARTICLE 1, SECTION 12, OF THE NEW YORK STATE CONSTITUTION

85. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 84 of this complaint as though fully set forth herein.

86. The above-described respective assault, battery, excessive force arrest, search, imprisonment, detention and malicious prosecution of the plaintiff were without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's summary punishment, arrest and subsequent detention.

87. As a result of the plaintiff's above-described assault, battery, excessive force, arrest, search, imprisonment, detention and prosecution, he was caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been otherwise damaged in his character and reputation.

88. Consequently, the plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

89. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

## CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

90. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 89 of this complaint as though fully set forth herein.

91. The defendants arrested and incarcerated the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

92. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

93. The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

94. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

   a. Wrongfully arresting individuals on the pretext that they are/were involved in illegal vice transactions;

   b. manufacturing evidence against individuals allegedly involved in illegal vice transactions;

c. unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

d. and arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas).

95. The aforesaid event was not an isolated incident. The City and its police commissioner has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City and its police commissioner have allowed policies and practices that allow the aforementioned to persist.

96. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

97. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event, such as the matter at bar, that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which has been done on many occasions.

98. Further, the City and its police commissioner have no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected.

99. Additionally, according to a report of the New York City Bar Association issued in 2000, the City and Kelly have isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

100. The existence of the aforesaid unconstitutional customs and policies may also be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals".

101. Furthermore, the existence of the aforesaid unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court (Eastern District of New York), in the case(s) of Jose Colon v. City of New York, et al (09-cv-8) and Maximo Colon v. City of

New York, et al (09-cv-9), wherein the Court stated, *inter alia*, that *"Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department"*, and that *"there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged"*.

102. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

(a) The right of the plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b) The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

(c) The right to be free from unreasonable detention and/or continued detention without probable cause in that the plaintiff was detained.

103. As a result of the actions of the defendants, the plaintiff was deprived of his rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, and New York City without just or legal cause when defendant City, by its employees and/or agents unlawfully arrested

and imprisoned the plaintiff thereby depriving him of his liberty without due process of law.

104. The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages he suffered.

105. The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of defendant City, and the City had the right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

106. The defendant officers actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

WHEREFORE, plaintiff respectfully prays judgment as follows:

1. For compensatory damages against all defendants in an amount to be proven at trial;
2. For exemplary and punitive damages against all defendants in an amount to be proven at trial;
3. For costs of suit herein, including plaintiff's reasonable attorney's fees; and;
4. For such other and further relief as the court deems proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
December 5, 2011

LAW OFFICES OF WALE MOSAKU, P.C.

By: _____

Wale Mosaku (AM5872)
Attorney for the Plaintiff
25 Bond Street, 3rd Floor
Brooklyn, N.Y. 11201
(718) 243-0994