UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
STEPHEN SPRINGLE,

                Plaintiff,

      - against -

 

THE CITY OF NEW YORK, POLICE OFFICER
KEVIN GIERAS (Shield # 6612) and
POLICE OFFICERS JOHN DOE 1-10,

                Defendants.
----------------------------------X

**MEMORANDUM AND ORDER**

  11 Civ. 8827 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

## I. Introduction

On January 11, 2011, plaintiff Stephen Springle ("Springle" or the "plaintiff") brought suit in the United States District Court for the Eastern District of New York against the City of New York (the "City") and several police officers ("Springle I"). Plaintiff asserted claims under 42 U.S.C. § 1983 ("section 1983") and New York State law for injuries he allegedly suffered in connection with his arrest on September 14, 2009. On July 22, 2011, the parties executed a settlement agreement, which provided, inter alia, that plaintiff released the City and its employees from all claims that were or could have been brought in that action.

Less than five months later, on December 5, 2011, plaintiff filed a new complaint in this Court, invoking the same laws, against the City, Police Officer Kevin Gieras, and Police Officers John Doe 1-10 (collectively, "defendants") for injuries that he allegedly suffered in connection with an earlier arrest on January 16, 2009 ("Springle II"). Specifically, plaintiff's complaint alleged the following causes of action: (1) against each defendant officer, false arrest and false imprisonment under section 1983 and New York State law; (2) against each defendant officer, malicious prosecution under section 1983 and New York State law; (3) against each defendant officer, excessive force under section 1983; (4) against each defendant officer, unlawful search under section 1983; (5) against each defendant officer, failure to intervene under section 1983; (6) against each defendant officer, denial of the constitutional right to a fair trial under section 1983 due to the fabrication of evidence; (7) against all defendants, false arrest, false imprisonment, malicious prosecution, excessive force and unlawful search pursuant to article 1, section 12 of the New York State Constitution; (8) against the City, municipal liability under section 1983 (the "Monell claim"[1]).   During a

---

[1] In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme Court held that although a local government may not be held vicariously liable under section 1983 for the unconstitutional acts of its employees or agents, it may be held liable under section 1983 when a violation of constitutional rights results from "execution of [the] government's policy or

telephonic conference on April 13, 2012, plaintiff conceded that his _Monell_ claim was barred by the release from _Springle I_ and therefore agreed to withdraw the claim.[2]  However, plaintiff did not withdraw his claim against the City pursuant to article 1, section 12 of the New York State Constitution.

On May 3, 2012, defendants moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants argue that plaintiff's claims are barred by the _Springle I_ release.  On May 24, 2012, plaintiff filed his opposition, and on June 18, 2012, defendants filed their reply.

For the reasons set forth below, defendants' motion to dismiss is granted.

## II. Background

### A. _Springle I_

On January 11, 2011, plaintiff filed in the Eastern District of New York his complaint in _Springle I_, naming as defendants the City and Police Officers Lloyd Gregory and Michael Malone.  Compl., _Springle v. City of New York_, No. 11-CV-0175 (E.D.N.Y. Jan. 11, 2011), Ex. A to Castro Decl.

---

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  _Id._ at 694.

[2] Plaintiff confirmed in his opposition brief that he withdrew his _Monell_ claim.  Pl.'s Mem. of Law in Opp'n to Defs. City of New York and Police Officer Gieras' Mot. to Dismiss 2 n.1; _see also_ Defs.' Mem. of Law in Supp. of Mot. to Dismiss 1 n.1.

[hereinafter Springle I Compl.].   The complaint asserted the following causes of action: (1) false arrest and false imprisonment under section 1983 and New York State law; (2) malicious prosecution under section 1983 and New York State law; (3) unlawful search under section 1983; (4) failure to intervene or intercede under section 1983; (5) denial of the constitutional right to a fair trial under section 1983 due to the fabrication of evidence; and (6) municipal liability under section 1983.  Id. ¶¶ 20-67.

According to the Springle I complaint, at approximately 3:00 a.m. on September 14, 2009, plaintiff was driving in Staten Island when the defendant police officers instructed him to pull over to the side of the road.  Id. ¶¶ 10-11.  After plaintiff had pulled over and produced his driver's license and vehicle registration, the officers arrested him, on the allegedly false ground that he had provided a fake driver's license.  Id. ¶¶ 12-15.   On April 22, 2010, approximately seven months after plaintiff's arrest, the case was dismissed.  Id. ¶ 19.

On July 22, 2011, the parties entered into a settlement agreement (the "Settlement Agreement"), which provided:

> Defendant City of New York hereby agrees to pay plaintiff Steven[3] Springle the sum of Eighteen Thousand

---

[3]  Although plaintiff's first name is spelled "Steven" in Springle I and "Stephen" in Springle II, the parties agreed during the April 13, 2012, telephonic conference that the plaintiff in Springle I is the same as the plaintiff in Springle II.

>    ($18,000.00) Dollars in full satisfaction of all
>    claims, including claims for costs, expenses and
>    attorney['s] fees.  In consideration for the payment
>    of this sum, plaintiff agrees to dismissal of all the
>    claims against the defendants and to release the
>    defendants, and any present or former employees and
>    agents of the City of New York or any agency thereof,
>    from any and all liability, claims, or rights of
>    action that were or could have been alleged in this
>    action, including claims for costs, expenses, and
>    attorney['s] fees.

Stipulation of Settlement & Order of Dismissal ¶ 2, <u>Springle v. City of New York</u>, No. 11-CV-0175 (E.D.N.Y. July 22, 2011), Ex. B to Castro Decl. [hereinafter Settlement Agreement].  The Settlement Agreement also required plaintiff to sign a "General Release" based on the above terms.  <u>Id.</u> ¶ 3.  The General Release, which plaintiff executed on the same day, provided:

>    Know that I, Steven Springle, . . . do hereby release
>    and discharge the defendants, City of New York, Lloyd
>    Gregory and Michael Malone; the defendants['] successors or assigns; and all past and present
>    officials, employees, representatives and agents of
>    the City of New York or any agency thereof, from any
>    and all liability, claims or rights of action that
>    were or could have been alleged by me in the
>    aforementioned action, including all claims for
>    attorney['s] fees, expenses and costs.

General Release, July 22, 2011, Ex. C to Castro Decl. [hereinafter General Release].

## B. **Springle II**

On December 5, 2011, plaintiff filed the present, "<u>Springle II</u>" complaint against the City, Police Officer Kevin Gieras, and unknown Police Officers John Doe 1-10.  According to the

complaint, on January 16, 2009, roughly eight months prior to the incident at issue in Springle I, plaintiff and several friends went to watch a movie at a cinema near Times Square. Compl. ¶¶ 9-11. After plaintiff and his friends had found their seats, the defendant police officers allegedly approached them and instructed plaintiff's friend to leave. Id. ¶¶ 20-21. Plaintiff decided to leave with his friend, but first told the officers that he and his friend would seek a refund. Id. ¶¶ 22-23. The officers then ordered him to leave immediately. Id. ¶¶ 22-23. As plaintiff was leaving, he told the officers that it was unfair to force him to leave without a refund. Id. ¶¶ 24-25. Plaintiff alleges that once he exited, "he was suddenly attacked by the defendant officers." Id. ¶ 26. The officers allegedly used excessive force in effecting plaintiff's arrest, "punch[ing] and kick[ing] the plaintiff on his head, body and limbs." Id. ¶ 28; see also id. ¶¶ 27-29.

On January 18, 2009, plaintiff was arraigned on charges of resisting arrest and disorderly conduct. Id. ¶ 31. Officer Gieras allegedly made false allegations against plaintiff in the criminal complaint. Id. ¶ 32. On July 7, 2009, approximately six months after plaintiff's arrest, the case was dismissed on "speedy trial" grounds. Id. ¶ 35.

### III. Discussion

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion, we may consider not only the allegations in the complaint, but also, inter alia, "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In particular, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)) (internal quotation marks omitted).

### B. Analysis

### 1. The Settlement Agreement and General Release

Defendants' single ground for their motion to dismiss is that plaintiff's complaint is barred by the Settlement Agreement and General Release.  Under Second Circuit precedent, "[a] settlement agreement is a contract that is interpreted according to general principles of contract law." Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007); see also Collins v. Harrison-Bode,

303 F.3d 429, 433 (2d Cir. 2002).   Similarly, "[a] release is a species of contract and 'is governed by principles of contract law.'"   Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 514 (2d Cir. 2001) (quoting Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau, 766 F.2d 709, 715 (2d Cir. 1985)).   While "federal law governs the validity of releases of federal causes of action," courts deciding claims in this context "look to state law to provide the content of federal law."   Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 15 (2d Cir. 1993); see also Chepilko v. City of New York, No. 11-CV-2878, 2012 WL 2792935, at *2 (E.D.N.Y. July 6, 2012) (citing decisions of the New York Court of Appeals to establish principles of contractual interpretation applicable to a settlement agreement and release, in the context of resolving section 1983 claims).   Therefore, our interpretation of the Settlement Agreement and General Release is governed by the New York law of contracts.

Under New York law, "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent."   Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002).   "The best evidence of what parties to a written agreement intend is what they say in their writing."   Id. (quoting Slamow v. Del Col, 79 N.Y.2d 1016, 1018 (1992)) (internal quotation marks omitted).   Therefore, "a written agreement that is complete, clear and unambiguous on its

face must be enforced according to the plain meaning of its terms." Id. Whether an agreement is ambiguous is a question of law for the Court. Id.

Here, the Settlement Agreement and the General Release each provided that plaintiff released the City and its employees from any claims that "were or could have been alleged" by plaintiff in Springle I. Settlement Agreement ¶ 2; General Release. This language is unambiguous. See Fernandez v. City of New York, No. 12-1591-cv, 2012 WL 5458029, at *1 (2d Cir. Nov. 9, 2012) (summary order) (citing Tromp v. City of New York, 465 F. App'x 50 (2d Cir. Mar. 8, 2012) (summary order)). Therefore, the question presented is whether plaintiff's claims in Springle II could have been asserted in the Springle I complaint, filed over a year after the incidents in Springle II occurred.

In determining which claims a plaintiff could have asserted in a prior action, courts "look to both federal joinder and venue law." Twine v. Four Unknown N.Y. Police Officers, No. 10 Civ. 6622, 2012 WL 6184014, at *8 (S.D.N.Y. Dec. 12, 2012); see also Fed. R. Civ. P. 82; 4 James Wm. Moore et al., Moore's Federal Practice § 20.02[5] (3d ed. 2012). Accordingly, we will now address joinder, followed by venue.

### 2. Joinder

The issue here is whether plaintiff could have joined in Springle I his claims from Springle II. As discussed below, the

answer is yes, for each of the Springle II claims.  Plaintiff could have joined his claims against the individual defendants based on the nearly identical Monell claims in the two complaints or, indeed, based solely on the Springle I Monell claim alone.  Further, plaintiff could have joined his claim against the City because the City was also named as a defendant in Springle I.

To start, plaintiff could have joined his present claims against Officer Gieras and the unnamed officers.  Joinder of these parties would have been governed by Rule 20(a), the rule providing for permissive party joinder, which states:

> Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  We will address the two elements of this test in turn.

Under the first prong of the Rule 20(a) test, a claim against a joined party must involve or arise out of "the same transaction, occurrence, or series of transactions or occurrences" that the claims against the existing defendants do. Id.  In applying this test, courts in this Circuit commonly ask

whether a plaintiff asserts a claim against the joined defendant that is "logically related" to the claims asserted against existing defendants. <u>Laureano v. Goord</u>, No. 06 Civ. 7845, 2007 WL 2826649, at *8 (S.D.N.Y. Aug. 31, 2007) (quoting <u>Martinez v. Robinson</u>, No. 99 Civ. 11911, 2001 WL 498407, at *5 (S.D.N.Y. May 10, 2001)) (internal quotation mark omitted); <u>see also</u> <u>Twine</u>, 2012 WL 6184014, at *8.  Rule 20(a)'s requirements "are to be liberally interpreted," <u>Chepilko v. City of New York</u>, No. 11-CV-2878, 2012 WL 2792935, at *3 (E.D.N.Y. July 6, 2012) (quoting <u>City of New York v. Joseph L. Balkan, Inc.</u>, 656 F. Supp. 536, 549 (E.D.N.Y. 1987)) (internal quotation mark omitted), and we remain mindful of the Supreme Court's well-established precept that "[u]nder the [Federal Rules of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged," <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 724 (1966), <u>superceded by statute on other grounds</u>, 28 U.S.C. § 1367 (2006).

Applying these principles to the facts at bar, plaintiff's claims against Officer Gieras and the unnamed officers clearly arose from "the same transaction, occurrence, or series of transactions or occurrences" from which the claims in <u>Springle I</u> arose.  <u>See</u> Fed. R. Civ. P. 20(a).  This conclusion follows most obviously from comparing the <u>Springle I</u> <u>Monell</u> claim with the

<u>Springle II</u> <u>Monell</u> claim.[4]   Because the <u>Monell</u> claims from the two complaints are nearly identical, plaintiff has acknowledged that the incidents at issue in the two cases are logically related.   Specifically, in <u>Springle I</u>, plaintiff asserted that the acts of Officers Gregory and Malone "were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department." <u>Springle I</u> Compl. ¶ 58.   Plaintiff elaborated:

> The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:
>
> a. Wrongfully arresting individuals on the pretext that they are/were involved in illegal acts;
>
> b. manufacturing evidence against individuals allegedly involved in illegal acts; and
>
> c. arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas).

<u>Id.</u> ¶ 59.

In the <u>Springle II</u> complaint, plaintiff similarly asserted that the acts of Officer Gieras and the unnamed officers "were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department." Compl. ¶ 93.   In particular, plaintiff alleged:

---

[4] As discussed below, the allegations supporting plaintiff's <u>Springle II</u> <u>Monell</u> claim remain relevant as admissions by plaintiff even though he has withdrawn that claim.

The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

a. Wrongfully arresting individuals on the pretext that they are/were involved in illegal vice transactions;

b. manufacturing evidence against individuals allegedly involved in illegal vice transactions;

c. unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

d. and arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas).

Id. ¶ 94.

As is readily apparent, the final practice alleged in Springle I is identical to the final practice alleged in Springle II. In other words, plaintiff alleged that the acts at issue in Springle I and the acts at issue in Springle II were all performed pursuant to the same City policy. Further, the first and second policies alleged in Springle I are nearly identical to the first and second policies alleged in Springle II, with the single difference that the Springle II complaint replaced "illegal acts" with "illegal vice transactions." This amounts to an allegation that the acts at issue in Springle II resulted from a specific policy within the broader class of policies to which plaintiff attributed the acts at issue in Springle I. Therefore, these overlapping allegations of

citywide practices plainly establish a logical relationship between the claims in Springle I and the claims in Springle II.[5] Indeed, the overlap between plaintiff's Monell claims suggests that it would have been in plaintiff's interest to allege both arrests in the same complaint, thus supporting his allegation that the arrests resulted from a common policy or practice.

The fact that plaintiff has withdrawn his Monell claim does not allow him to escape his allegations in support of that claim.[6] The Second Circuit has held that although "[a] statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission," Tran v. Alphonse Hotel Corp., 281 F.3d 23, 32 (2d Cir. 2002), overruled on other grounds by Slayton v. Am. Express Co., 460 F.3d 215 (2d Cir. 2006), "[t]he amendment of a pleading does not make it any the less an admission of the party," Austin v. Ford Models, Inc., 149 F.3d 148, 155 (2d Cir. 1998), abrogated on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) (quoting Andrews v. Metro N. Commuter

---

[5] It is irrelevant that plaintiff alleged a fourth practice, involving unlawful searches, in Springle II; plaintiff established a logical relationship between the claims in the two cases simply by alleging that there was at least one City policy that accounted for all of his claims.

[6] We need not decide whether withdrawing a claim in a conference with the Court, as plaintiff did here, has the same legal effect as filing an amended complaint that omits the allegations in support of that claim. As discussed below, even if we construe plaintiff's withdrawal of his Monell claim as an amendment of his complaint to omit the section addressing that claim, the Monell allegations would still constitute an admission by plaintiff.

R.R. Co., 882 F.2d 705, 707 (2d Cir. 1989)) (internal quotation marks omitted).  Here, plaintiff's allegations in support of his withdrawn Monell claim are admissions, which plaintiff may attempt to rebut, but has not.  Indeed, plaintiff has not provided any reason for withdrawing his Monell claim other than that it is barred by the General Release.  Therefore, we may consider plaintiff's allegations in support of his Springle II Monell claim in determining whether there is a logical relationship between the claims in Springle I and the claims in Springle II.  Cf. Tran, 281 F.3d at 32 (holding that while withdrawn allegations are not "conclusive" admissions, they may nonetheless be used by a factfinder in evaluating plaintiff's credibility as a witness).

Taking a step back, we would note that it makes sense for us to consider plaintiff's Springle II Monell claims here.  Because we are concerned with whether plaintiff's claims in Springle II could have been joined in Springle I, our focus is properly on the time at which plaintiff filed his Springle I complaint.  At that time, if plaintiff had considered whether to join in his complaint his claims from Springle II, those claims would have included the withdrawn Monell claim because the claim would clearly not have been barred by the as-yet-unexecuted General Release.  Given that plaintiff's withdrawn Monell claim would have been among the Springle II claims joined in Springle

I, and given that, as discussed above, plaintiff's overlapping Monell claims link the incidents at issue in each case, there would plainly have been a logical relationship between the claims in Springle I and the claims in Springle II.

Even if we permitted plaintiff to distance himself from his Springle II Monell claim, our conclusion would not change.[7]   That is so because plaintiff's Springle I Monell claim, by itself, would have been sufficient to establish a logical relationship between the claims in Springle I and the claims in Springle II. Specifically, as discussed above, plaintiff alleged in Springle I that the actions of Officers Gregory and Malone "were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department."   Springle I Compl. ¶ 58.   Plaintiff elaborated:

> The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:
>
> a. Wrongfully arresting individuals on the pretext that they are/were involved in illegal acts;
>
> b. manufacturing evidence against individuals allegedly involved in illegal acts; and
>
> c. arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas).

Id. ¶ 59.

---

[7] Not only would plaintiff's decision to drop his Monell claim not change our conclusion regarding joinder of the individual defendants, but it would also be an admission that plaintiff could have joined in Springle I his present claims against the City pursuant to Rule 18, confirming our analysis below.

These alleged policies and practices from Springle I create a logical relationship between plaintiff's present claims against the individual defendants and his claims in Springle I.[8] First, the alleged policies and practices connect plaintiff's present claims against the individual defendants to his claims in Springle I against the officers named as defendants there. For instance, a policy of "[w]rongfully arresting individuals on the pretext that they are/were involved in illegal acts" would have explained the allegedly false arrest in Springle II as well as the allegedly false arrest in Springle I. Second, and for the same reason, the alleged policies and practices connect plaintiff's present claims against the individual defendants to any New York vicarious liability claims plaintiff asserted in Springle I against the City. Finally, for the reasons stated above, plaintiff's present claims against the individual defendants would be causally related to his Springle I Monell

---

[8] It is immaterial whether plaintiff would have been able to substantiate through discovery his allegations regarding the City's policies and practices. At the point at which plaintiff filed his complaint in Springle I, discovery had obviously not commenced and thus any decision evaluating the propriety of joinder would have accepted the complaint's well-pleaded factual allegations as true. Cf. Martinez v. Robinson, No. 99 Civ. 11911, 2001 WL 498407, at *5-*6 & n.2 (S.D.N.Y. May 10, 2001) (finding joinder proper based on allegations in plaintiff's complaint and distinguishing Grayson v. K-Mart Corp., 849 F. Supp. 785 (N.D. Ga. 1994), on the ground that, while the parties in the case at hand "ha[d] not even begun discovery," Grayson had been decided on summary judgment and had concluded that the plaintiffs' allegation of "centralized policy-making" was not supported by evidence in the record). Although the Court in Springle I might later have found joinder improper if the evidence produced through discovery did not support the existence of the alleged policies or practices, plaintiff may not argue before this Court that joinder in Springle I would have been improper because his own allegations of policies or practices were false.

claim against the City.  It follows, therefore, that plaintiff's Springle I Monell claim is sufficient to connect his Springle II claims against the individual defendants to his claims in Springle I, indicating that all of the claims arise from the same "transaction, occurrence, or series of transactions or occurrences."[9]  Cf. Twine v. Four Unknown N.Y. Police Officers, No. 10 Civ. 6622, 2012 WL 6184014, at *10 (S.D.N.Y. Dec. 12, 2012) (distinguishing cases involving Monell claims because Monell claims "provid[e] an essential nexus between otherwise unrelated allegations of civil rights violations by individual officers"); Chepilko v. City of New York, No. 11-CV-2878, 2012 WL 2792935, at *3 (E.D.N.Y. July 6, 2012) ("[P]laintiff's claims [against different police officers involved in three separate incidents] are linked by plaintiff's identical claim against the City of New York: that the City has a policy or custom of unlawfully harassing and/or arresting vendors of expressive art on public property.").

In addition to arising from the same "transaction, occurrence, or series of transactions or occurrences," claims against joined defendants must also present a "question of law or fact common to all defendants."  Fed. R. Civ. P. 20(a).

_____

[9] In light of plaintiff's Monell claims, it is irrelevant that, as plaintiff points out, "defendant Gieras was not involved in the incident that formed the basis of the plaintiff's complaint in Springle I."  Pl.'s Mem. of Law in Opp'n to Defs. City of New York and Police Officer Gieras' Mot. to Dismiss 8.

Here, as discussed above, plaintiff asserted overlapping <u>Monell</u> claims in his <u>Springle I</u> and <u>Springle II</u> complaints, thereby alleging that the acts at issue in <u>Springle I</u> and in <u>Springle II</u> resulted from the same City practices. Consequently, there are several questions of fact common to all defendants: Do New York City police officers wrongfully arrest individuals on pretextual justifications? Do they arrest innocent persons to meet "productivity" goals? Do they manufacture evidence against persons wrongfully accused of illegal acts? Even though only the City would be liable for the existence of such policies or practices, the factual question of whether the conduct of the individual defendants resulted from an unconstitutional policy or practice or, rather, was performed for proper cause is relevant both to the claims against the City and to the claims against the individual defendants. In other words, the <u>Monell</u> claims asserted in <u>Springle I</u> and in <u>Springle II</u> give rise to factual questions common to all defendants. Indeed, even if we were to disregard the <u>Springle II</u> <u>Monell</u> claim, the <u>Springle I</u> <u>Monell</u> claim alone would give rise to common factual questions between all defendants. See <u>Martinez v. Robinson</u>, No. 99 Civ. 11911, 2001 WL 498407, at *6 (S.D.N.Y. May 10, 2001) (observing that courts in this Circuit "have consistently allowed joinder of plaintiffs who allege discrete injuries stemming from a common institutional policy or custom"); <u>cf.</u> <u>id.</u> (granting

plaintiff's Rule 20 motion to join additional plaintiff asserting claims based on different incident, in suit against New York City Department of Correction officers and supervisors under section 1983, because "both [plaintiffs] contend that supervisors in [the Department of Correction] were deliberately indifferent to the risk of harm imposed on prisoners who were rear-cuffed while being transported"). Therefore, because the claims against the individual defendants in Springle II arise out of the same transaction, occurrence, or series of transactions or occurrences as do the claims in Springle I and involve at least one common question of law or fact, the claims against the individual defendants in Springle II could have been joined in Springle I pursuant to Rule 20(a).

Plaintiff could also have joined in Springle I his New York State law claim against the City. Joinder would have been governed by Rule 18(a), which provides: "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Here, plaintiff asserted at least one claim against the City in Springle I, and thus he could have joined his present claim against the City under Rule 18(a).

### 3. Venue

Under the federal statute governing venue, a plaintiff may bring suit in, inter alia, "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b) (2006).  Venue must be proper "as to each claim against each defendant." Twine v. Four Unknown N.Y. Police Officers, No. 10 Civ. 6622, 2012 WL 6184014, at *11 (S.D.N.Y. Dec. 12, 2012) (quoting Holmes v. Grant, No. 03 Civ. 3426, 2006 WL 851753, at *21 (S.D.N.Y. Mar. 31, 2006)) (internal quotation mark omitted).

With regard to residency, the statute provides that an entity with the capacity to sue and be sued in its common name "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(2).  Further:

> [I]n a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State.

Id. § 1391(d).  Finally, "a natural person . . . shall be deemed to reside in the judicial district in which that person is domiciled."  Id. § 1391(c)(1).  Where the natural person is a public official, courts in this Circuit have held that

"residence for the purpose of venue is where the officials perform their duties." Dunston v. N.Y.C. Police Dep't, No. 10 Civ. 8117, 2010 WL 5065903, at *3 n.4 (S.D.N.Y. Dec. 7, 2010) (quoting Legrand v. City of New York, No. 09 Civ. 9670, 2010 WL 742584, at *4 n.1 (S.D.N.Y. Mar. 3, 2010)) (analyzing venue over New York City police officers sued under section 1983 in both their individual and official capacities).

Here, plaintiff would not have violated the venue statute by joining his present claims in Springle I. In both Springle I and Springle II, plaintiff named the City as a defendant, and the City, of course, is subject to personal jurisdiction in the Eastern District and is thus deemed a "resident" of the Eastern District. Therefore, venue would have been proper if all defendants were residents of New York State. Plaintiff has alleged that the individual defendants in Springle I and Springle II were all New York City police officers at the time of the incidents in which they were allegedly involved, Springle I Compl. ¶ 7; Compl. ¶ 6, and there is no indication that they did not continue to be so employed throughout the proceedings in Springle I. It follows that the individual defendants in both cases "resided" within New York State for venue purposes.

Consequently, plaintiff would not have violated federal venue law by joining in Springle I his claims in Springle II.[10]

In short, plaintiff could have joined his Springle II claims in Springle I pursuant to the Federal Rules and without disturbing venue.  Therefore, plaintiff's present claims "could have been alleged" in Springle I, thus the claims are barred by the Settlement Agreement and General Release.  Indeed, not only are the claims barred, but it is hard not to see them as an effort to manipulate the judicial process in hopes of maximizing plaintiff's recovery by filing two lawsuits rather than one.

## IV. Conclusion

For the reasons stated above, defendants' motion is granted.  Plaintiff's complaint is dismissed with prejudice, and the Clerk of the Court is directed to close the case.


SO ORDERED.


Dated:      New York, New York
            February 14, 2013

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

---

[10] Although the Southern District would have been a proper venue for the claims in Springle II, this does not disturb the fact that venue would also have been proper in the Eastern District.  See 17 James Wm. Moore et al., Moore's Federal Practice § 110.01[4][a] (3d ed. 2012).

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for Plaintiff:
Wale Mosaku, Esq.
Law Offices of Wale Mosaku, P.C.
25 Bond Street, 3rd Floor
Brooklyn, NY 11201


Counsel for Defendants:
Johana V. Castro, Esq.
Office of the Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007